IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MARY ANN MAYFIELD, TERESA MCALISTER, AS INDEPENDENT ADMINISTRATRIX OF THE ESTATE OF PATRICK EUGENE OLIVER, DECEASED, AND AS INDEPENDENT ADMINISTRATRIX OF THE ESTATE OF KAITLYN RENEE OLIVER, A MINOR, DECEASED, *Plaintiffs*, v. THE UNITED STATES OF AMERICA, *Defendant.* | § § § § § § § § § § § § § § | CIVIL NO. 6-18-CV-00261-ADA |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (ECF No. 33), Plaintiffs' Response (ECF No. 34), and Defendant's Reply (ECF No. 35). After having reviewed the parties' briefs, case file, and applicable law, the Court has determined that Defendant's Motion for Summary Judgment should be **GRANTED** for the following reasons.

## I. BACKGROUND

### A. Factual Background

Plaintiffs in this case bring wrongful death and survival action claims against the United States pursuant to the Federal Tort Claims Act ("FTCA"). The facts at issue in this case are nothing short of horrific.

This case arises from events that took place at Temple Lake Park on Belton Lake. Belton Lake was created by the construction of the Belton Dam, as authorized by Congress in the Leon River Flood Control Act in 1946. ECF No. 33, Def.'s Answer to Interrogatory No. 1. Belton

Lake is a flood control and water conservation project that the United States Army Corps of Engineers ("USACE") is tasked with managing. ECF No. 33, Bruggman Depo., 62:18–63:8. Temple Lake Park, and the Sandy Point section within the park, are situated on Belton Lake, and are one of several parks and recreational areas on Belton Lake. Sandy Point is a popular recreational area used by both swimmers and boaters, with both occupying the area. ECF No. 33, Def.'s Answers to Interrogatories Nos. 1 & 2, Ex. 2.

Belton Lake, as managed by the USACE, is "open to public use generally for boating, swimming, bathing, fishing, and other recreational purposes . . . ." 16 U.S.C. § 460d. Under USACE regulations, swimming can be done at one's own risk anywhere on the lake where it is not specifically prohibited, such as around boat docks or near the dam. 36 C.F.R. § 327.5(a). Similarly, boats can be used generally in all locations except where expressly prohibited, such as in the clearly marked and protected swim areas. 36 C.F.R. § 327.3(c). As previously mentioned, Sandy Point is an area in which both swimmers and boats are permitted to use the area at their own risk.

On June 23, 2017, Patrick Eugene Oliver and his daughter Kaitlyn Renee Oliver, together with Plaintiffs and other friends, went to Temple Lake Park, specifically to the section of the park known as Sandy Point. ECF No. 33–1, Pls.' First Am. Comp., at ¶ 9. On that day, like most days at Sandy Point, swimmers and boaters alike were using the water and beach areas of the park. Plaintiff Mayfield testified that there were approximately 50–75 swimmers in the water and another 100 on the beach at any time. ECF No. 33–5, Mayfield Dep. at 38:20–39:22. In addition, there were boats on the beach and boats in the water, which would freely come and go among the swimmers. *Id.* at 40:7–24, 42:21–43:16. One of those boats was a three-story houseboat beached not far from where Plaintiffs' group was enjoying the recreational area. *Id.* at 51:8–12.

Later that evening, the driver of the houseboat suddenly backed his boat off the beach without warning and without attempting to ensure no people were behind the boat. Pls. Am. Comp. at ¶ 9. At that time, Kaitlyn and Patrick were swimming almost immediately behind the boat, and Kaitlyn was quickly sucked into the propellers of the houseboat. *Id.* Patrick immediately attempted to rescue his daughter, but had his legs amputated by the propellers. *Id.* Tragically, Kaitlyn passed away at the scene. Patrick later succumbed to his wounds two weeks after the incident. *Id.* at ¶¶ 9–10. Plaintiffs bring the claims at issue here as a result of these events.

### B. Procedural History

Plaintiffs filed suit on September 4, 2018. Soon thereafter, the United States moved to dismiss the Complaint for lack of subject matter jurisdiction, citing the discretionary function exception to the FTCA. ECF No. 14. In the Court's Order ruling on the motion, this Court held that USACE's decision to permit swimmers and boaters to commingle on and around Sandy Point was a protected discretionary decision and granted Defendant's Motion to Dismiss with respect to that claim. *See* ECF No. 24, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiffs' Original Complaint, at 13. However, the Court did not dismiss Plaintiffs' remaining allegation: whether Defendant was negligent for failing to post warning signs regarding the presence of boats at Sandy Point. *Id.* at 13–14.

## II.  LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). A material fact is one that is likely to

reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating that no genuine dispute of material fact exists lies with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once presented, a court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Accordingly, the simple fact that the court believes that the non-moving party will be unsuccessful at trial is insufficient reason to grant summary judgment in favor of the moving party. *Jones v. Geophysical Co.*, 669 F.2d 280, 283 (5th Cir. 1982). However, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(C)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts

will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995). Moreover, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v.* Barr, 19 F.3d 1527, 1533 (5th Cir. 1994). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *See* FED. R. CIV. P. 56; *Matsushita*, 475 U.S. at 586.

### B. The Federal Tort Claims Act

The FTCA waives sovereign immunity and permits suits against the United States for claims sounding in state tort law for money damages. 28 U.S.C. § 2674 (waiving sovereign immunity to make the government liable "in the same manner and to the same extent as a private individual under like circumstances"). It provides district courts with jurisdiction over monetary claims against the Government for the negligent or wrongful acts of its employees "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

However, the liability of the United States under the FTCA is subject to various exceptions contained in 28 U.S.C. § 2680, including the "discretionary function" exception. *See United States v. Gaubert*, 499 U.S. 315, 322 (1991). The discretionary function exception provides that the Government is not liable under the FTCA for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception "covers only acts that are discretionary in nature, acts that

'involv[e] an element of judgment or choice,' and 'it is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies." *Id.* (quoting *Berkovitz by Berkovitz v. U.S.*, 486 U.S. 531 (1988); *U.S. v. VarigAirlines*, 467 U.S. 797 (1984)).

### III. ANALYSIS

Defendant argues it is entitled to summary judgment on two independent grounds: (1) the discretionary function exception applies in this case because the United States did not fail to warn of a condition that it had created; and (2) Plaintiffs' cannot prove that the Government breached any duty to the decedents. ECF No. 33, Def.'s Mot. for Summ. J., at 1 ("Def.'s Mot."). Because the discretionary function exception argument is dispositive, the Court will first address whether the exception to the FTCA applies in this case. The Court finds that it does.

#### A. The Discretionary Function Exception Requires Dismissal of Plaintiffs' Claims.

Defendant argues Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction because Plaintiffs have not met their burden of showing that the discretionary function exception does not apply to bar their claims. Specifically, Defendant contends that the government did not "create an additional danger after it made its discretionary decisions" (i.e., allowing boaters and swimmers to comingle and not posting warning signs). Def.'s Reply, ECF No. 35 at 2.

Conversely, Plaintiffs contend that the discretionary function exception does not apply because the dangerous condition that the government allegedly created was the comingling of boaters and swimmers; thus, because the government did not post warning signs, the government was negligent and created "an additional danger." Pls.' Resp., ECF No. 34, at 6–7.

At the onset, the Court notes that the parties appear to be in disagreement concerning what was the "discretionary decision" made by the government. In the Court's previous order

6

granting in part and denying in part Defendant's Motion to Dismiss, the Court held that the government's decision to allow the comingling of boaters and swimmers in the same area was a discretionary decision that fell within the exception to the FTCA. *See* ECF No. 24, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiffs' Original Complaint, at 13. Thus, an argument by Plaintiffs' concerning this decision by the government is irrelevant at the summary judgment stage.

However, Defendant seems to argue that the decision to warn or not warn was also a discretionary decision and, because the United States did not create any dangerous condition after making its decision not to post warning signs, the discretionary function exception applies. Def.'s Mot. at 7–8. Plaintiffs' argue the government simply assumes that the decision not to post warning signs is discretionary, which according to Plaintiffs, is precisely the issue before the Court. Pls.' Resp. at 6. Instead, Plaintiffs' frame the issue this way: "[t]his Court must look to whether the decision not to warn, made after the critical discretionary decision to allow both swimmers and boaters to comingle at Sandy Point, created a dangerous condition for which the government may be held responsible." *Id.* at 6–7.

The Court agrees with Plaintiffs that the relevant "discretionary decision" was the government's choice to allow both boaters and swimmers at Sandy Point.[1] Although the discretionary function exception is to be broadly interpreted, to include the decision not to post signs would almost certainly allow the exception to swallow the rule. The Fifth Circuit discussed this point in *Denham v. United States*. 834 F.2d 518, 520 (5th Cir. 1987). In *Denham*, the court

---

[1] If the Plaintiffs' framing of the issue is incorrect, the Court believes the outcome remains the same. If it was indeed a discretionary decision to not post warning signs, the Court agrees with Defendant that the government did nothing to create an "additional danger" after it made its decision. *See Lively v. United States*, 870 F.2d 296, 299 (5th Cir. 1989). The undisputed record reflects that USACE undertook no actions to modify the natural features of Sandy Point. The only condition the government could be said to have created is the mixed use of Sandy Point for both boaters and Swimmers, which as previously discussed, the Court already determined fell within the exception. Thus, if the Court considers the discretionary decision to be whether to post a sign or not, the outcome remains the same: the government did not do anything to increase the danger to the Sandy Point area.

7

held that "once the government has made a decision to act the government is responsible for acts negligently carried out even though discretionary decisions are constantly made as to how those acts are carried out." *Id.* Such is this case here. The government made a discretionary decision (*i.e.,* comingle boats and swimmers); thus, the government is responsible for acts negligently carried out even though discretionary decisions are constantly made as to how those acts are carried out (*i.e.,* not posting warning signs). Thus, the Court finds the dispositive question to be whether the decision not to warn created a dangerous condition for which the government may be held responsible. *See Rise v. United States*, 630 F.2d 1068 (5th Cir. 1980) (holding that once the government decided to furnish medical care for dependents of service personnel, negligence in the medical are was actionable even though it is obvious that treatment involves frequent discretionary decisions).

Although the Court agrees with Plaintiffs on what is at issue in this case, the analysis is not complete. The Court must now consider whether the government "create[d] an additional danger after it made its discretionary decisions." *Lively v. United States*, 870 F.2d 296, 299 (5th Cir. 1989). Plaintiffs contend the government created the additional danger because it allowed boaters and swimmers to comingle on Sandy Point, where it built barbeque pits, picnic tables and other amenities to attract them. Pls.' Resp. at 7. Because of these amenities, Sandy Point became a popular place for both boaters and swimmers to gather. Thus, according to Plaintiffs, the government's decision "created a dangerous condition, which it failed to mitigate by warning those using Sandy Point." *Id.*

The Court finds Plaintiffs' argument to be without merit and completely circular. Plaintiffs' only point to the decision to allow both swimmers and boaters to use the water located at Sandy Point as the only "additional danger" created by the government. But this danger was

also the decision the Court previously found to be squarely within the discretionary function exception. Moreover, the correct focus is whether the government took some action *after* the initial decision to allow swimmers and boaters to freely use the majority of the waterways, and by doing so created a *new* danger. *See Denham*, 834 F.2d at 19–20 (government found liable because concrete anchors holding the swimming area in place shifted and moved into the swimming area, thereby causing a new danger). Because the Plaintiffs cannot point to any additional danger created by the government, their claims must fail under the discretionary function exception.[2]

Two Fifth Circuit cases are particularly instructive here. In *Butler v. United States*, the Fifth Circuit held that once the critical discretionary decision is made, the government is "required to perform the related operational functions with reasonable care." 726 F.2d 1057, 1063 (5th Cir. 1984). In that case, several people had drowned when swimming at a state park after they stepped into an underwater depression. The depression had been created by dredging operations the Army Corps of Engineers undertook while repairing a hurricane-damaged seawall. The court held that while the decision to dredge for sand needed to repair the seawall was a discretionary function, the failure either to fill in the depression or adequately to warn swimmers of the danger was an operational function for which the government could be held liable under the FTCA. *Id.* at 1063–64.

Likewise, the decision to allow mixed use of Sandy Point was a discretionary decision. Here, however, unlike the government's decision in *Butler*, there was no action by the

---

[2] The only action which the government could have said to have done after the decision to allow mixed use of Sandy Point was the installation of barbeque pits and other amenities. However, there is no evidence that the amenities were constructed for the purpose of attracting more boats and swimmers. Regardless, the Court does not believe the construction of picnic tables is the type of action by the government that constitutes an "additional danger" made after the discretionary decision. *See, e.g., Butler v. United States*, 726 F.2d 1057, 1063 (5th Cir. 1984)(finding a hidden depression created by the government and the government's failure to fix it an "additional danger"); *Denham*, 834 F.2d at 19–20 (finding shifted concert anchors into swimming area was an "additional danger").

9

government that created a danger beyond the inherent danger that was already present. Unlike the decision in *Butler,* which necessitated some action by the government (fill in the hole or warn swimmers about it), the government's decision to allow both swimmers and boaters to occupy the same space did not put the USACE in the same predicament. By not posting any warning signs at Sandy Point, the USACE neither added to nor changed the danger that was already present at Sandy Point. Thus, if the danger at issue is purely derived from boaters and swimmers occupying the same space, that danger is not added to or changed by the continued absence of a warning sign, but instead remains the same danger it has always been.

The Fifth Circuit's opinion in *Denham* is also relevant in this case. In *Denham*, a swimmer's-only area (also at Temple Lake Park) was designated and cordoned off at the discretion of the USACE. 834 F.3d at 519. The decision to designate and cordon off the swimming area was found to be protected by the discretionary function exception. *Id.* at 519–20. However, after the area was built, some of the concrete anchors holding the cordons in place became detached and drifted into the swimming area. The evidence presented showed the USACE was aware of the new danger but did not act to correct it or warn the public. *Id.* Subsequently, a swimmer was injured when he dove in and struck the anchor. *Id.* The court found the government liable for this *new* danger. *Id.* The Court believes that this type of *new* danger is precisely the type of additional danger present in cases in which the discretionary function exception does not apply because some subsequent change in conditions which the government was uniquely positioned to understand gave rise to a duty on the part of the government to correct or warn of the peril.

Unlike *Denham*, nothing has changed concerning the area around Sandy Point. The same mix of both boaters and swimmers using the water area has remained. Plaintiffs cannot point to

any evidence in which the government has created an additional danger because of its decision to comingle boaters and swimmers at Temple Lake Park. Thus, *Denham* and *Butler* are readily distinguishable from the facts presented in this case. Therefore, the Court must dismiss the Plaintiffs' claims for lack of subject matter jurisdiction because they fall squarely within the discretionary function exception to the FTCA.

### B. Plaintiffs have not Established a Duty to Warn

Although the Court believes the first issue is dispositive in this case, out of an abundance of caution, the Court will also address Defendant's second argument in its Motion for Summary Judgment. Defendant argues that Plaintiffs cannot establish the basic elements of their claim of negligence. Def.'s Mot. at 8. Specifically, Defendant claims Plaintiffs cannot establish the existence of a duty to warn. *Id.*

In order to successfully prevail on a negligence claim, a plaintiff must prove three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately cased by the breach. *Sanchez v. Swift Transp. Co. of Ariz.*, 2017 WL 5654987, at 1 (W.D. Tex. May 30, 2017). Moreover, a plaintiff has the burden to establish that he or she was owed a duty under Texas law. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Specifically, if the claim is one of premises liability, such as the claim here, the specific question of whether a landowner owes a duty to someone injured on the property is a question of law for the court. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 209 (Tex. 2005).

Importantly, the Texas Recreational Use Statute applies in this case. The Statute provides that a landowner who has allowed another to use the land for a recreational purpose does not owe any greater degree of care than is owed to a trespasser, unless the landowner is found to have

been grossly negligent or found to have acted in bad faith or malicious intent.[3] In other words, the duty owed to a recreational user is to refrain from committing gross negligence. Under Texas law, gross negligence has two components, a subjective and objective component, and means an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code § 41.001(11).

The government challenges the existence of its duty under the statute on two grounds: (1) it had no duty to warn because the houseboat that killed Kaitlyn and her father was an "open and obvious" defect or condition; and (2) it had no actual, subjective awareness of the risk of injury posed by comingling swimmers and boaters. The Court will address each argument in turn.

**(1) The Danger was "Open and Obvious"**

A landowner has no duty to warn or protect recreational users from open and obvious defects or conditions. *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006). An open and obvious condition is one that "any fool can plainly see." *Hernandez v. Wal-Mart Stores Texas, LLC*, 2017 WL 9291961, at *5 (W.D. Tex. 2017) (quoting *Goodson v. Southland Corp.*, 454 S.W.2d 823, 827) (Tex. App.—El Paso 1970, writ ref'd n.r.e.). However, a government-defendant has a duty to warn or protect regarding any artificial condition which creates a danger that is "latent and not so inherent in the recreational use that it could reasonably be anticipated" by the recreational user. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015).

---

[3]Plaintiffs have not alleged bad faith or malicious intent in this case.

12

Defendant claims that the dangers imposed by a boat, let alone a three-story houseboat, in the water with swimmers is an "open and obvious" danger that was well known to Plaintiffs. Def.'s Mot. at 10. Defendant points to deposition testimony that Plaintiffs were aware of the danger imposed by boats in the Sandy Point area and that they were aware of the specific houseboat in question. Plaintiffs respond by arguing that although they were aware of the dangers of boats, and the possibility to being hurt by a boat while in the water near one, they argue that the average person was not aware of the unusually dangerous condition present at Sandy Point. Resp. at 11–12. In essence, Plaintiffs argue they knew of the general danger posed by boats (such as being run over, etc), but they were not aware of the specific danger posed in this case – being sucked into a propeller.

The Court finds that the three-story houseboat that caused the harm was an open and obvious danger as described under Texas law. Although the specific means by which the decedents were harmed may not have been open and obvious (i.e., an underwater current sucking them into a propeller), that is not the correct analysis. Rather, the individuals only need to be aware of the general danger, not the exact sequence of events that produced the harm. *See Walker v. Harris*, 924 S.W.2d 375, 377 (1996) ("Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable."); *see also City of Waco v. Kirwan*, 298 S.W.3d 618, 626 (Tex. 2009) (concluding that landowner had no duty to warn about risk of falling associated with sitting on cliff's edge even though the particular risk– the collapse of the cliff–was unexpected). Moreover, the danger imposed by boats is not a latent, hidden peril that one using a mixed-use water area would not expect. *See Shumake*, 199 S.W.3d at 288 (stating a landowner can be liable for gross negligence in creating a condition that a

recreational user would not reasonably expect to encounter on the property in the course of the permitted use).

Here, Plaintiffs were well aware that Sandy Point was used by both boaters and swimmers, and they were aware of the general danger posed by boats. Thus, the type of danger in this case is not a latent, hidden, or uncommon peril that gives rise to a duty owed by the landowner. *Compare Stephen F. Austin State University v. Flynn*, 228 S.W.3d 653, 659–60 (Tex. 2007) (finding no duty to warn or protect cyclist from visible oscillating sprinkler that knocked plaintiff off her bike as she rode along a public trial) *with Shumake*, 199 S.W.3d at 281–82, 288 (recognizing a duty to warn when a man-made structure (an underground, hidden culvert) interacted with the natural perils associated with river tubing to create a powerful undertow that sucked plaintiff under water and trapped her within the culvert).

Even if the danger posed by the boat in this case was not open and obvious, the Court believes Plaintiffs cannot satisfy both the objective and subjective components needed to establish gross negligence.[4]

**(2) The Government did not have Actual, Subjective Awareness of the Risk**

Defendant also argues that the government did not have the actual, subjective awareness of the risk of injury to swimmers as a result of the mixed use with boats. Def.'s Mot. at 11. Plaintiffs dispute this and point to disposition testimony that indicates two corporate witnesses for Defendant were aware of the risks posed by boats and swimmers intermingling. Resp. at 13–14.

---

[4]The Court also believes that even if the danger was not open and obvious, the government did not meet the objective component of gross negligence. *See* Tex. Civ. Prac. & Rem. Code § 41.001(11)(A). There is no evidence in the record to suggest the government knew of the extreme degree of risk involved with comingling boaters and swimmers. However, because this element wasn't addressed by the parties, the Court will focus on the subjective component.

To prevail on a theory of gross negligence, a plaintiff is required to prove that the defendant had actual, subjective awareness of the risk of injury to the plaintiff. *See Suarez*, 465 S.W.3d at 633; *see also Id.* at 634 ("[I]n other words, the plaintiff must prove that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care.").While there is no single method by which this can be done, "courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition. *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam).

In this case, the record shows that the United States had no knowledge of the risk of injury to swimmers as a result of the mixed use and nevertheless proceeded with conscious indifference to the safety of Plaintiffs. In fact, the record is clear that the fatalities in this case are the very first injuries to a swimmer due to contact with a boat at Sandy Point. ECF No. 33–3, Bruggman Depo., Ex. 3 at 86:12–21. Thus, this case is not the typical situation in which a Defendant knew of prior reported injuries of the type of harm encountered by a plaintiff and did nothing.

Plaintiffs point to several deposition admissions where Defendant's witnesses testified they were aware of the dangers posed by boats to swimmers. *See, e.g.*, ECF No. 34–4, Schimank Depo., Ex. 3 at 27:33–28:6. However, the Court believes Plaintiffs confuse a general awareness of a risky interaction with the actual, subjective awareness of a particular risk that requires a warning. For instance, Mr. Schimank testified that there is a risk to swimmers swimming near a boat ramp because there is a lot of boat traffic in such an area, and he acknowledges that a risk could be a boat backing over someone. *See* Schimank Dep. 27:23–28:1. Thus, the Court believes that to the extent this evidence raises any inference that Defendant knew uniquely perilous conditions existed at Sandy Point (that people can be sucked into boat propellers), the evidence is

equally consistent with mere knowledge of risks inherently associated with swimming near boats. *See Suarez*, 465 S.W.3d at 634. As such, it is no evidence of subjective awareness of and conscious indifference to the particular danger that caused the deaths of the decedents.

### C. Attractive Nuisance Doctrine

Plaintiffs argue the government owed to Kaitlyn a greater duty than that owed to her father because the attractive nuisance doctrine applies in this case. Resp. at 15. Defendant contends that the attractive nuisance doctrine does not apply because the danger was "open and obvious." Def.'s Mot. at 13.

The attractive nuisance doctrine provides that a possessor of land in Texas owes a trespassing child the same duty it owes to an invitee–that is, the duty to adequately warn of the condition and make the condition reasonably safe. *Texas Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex. 1997). Nevertheless, the doctrine does not apply if the danger is open and obvious. *Kopplin v. City of Garland*, 869 S.W.2d 433, 441 (Tex. 1993) (doctrine did not apply in a case where a child fell of playground equipment, because those dangers were deemed to be inherently obvious to the activity). Because the doctrine applies to owners of recreational property, Plaintiffs argue Defendant owed Kaitlyn a greater duty than that owed to her father.

The Court first notes that the facts before the Court do not fit neatly within the attractive nuisance doctrine. Here, Kaitlyn's parents were only feet away when tragedy struck; whereas in most attractive nuisance cases, the child is an unaccompanied minor and acting unbeknownst to the child's parents. *See, e.g., Burk Royalty Co. v. Pace*, 620 S.W.2d 882, 884 (Tex. App.—Tyler 1981, no pet.); *Banker v. McLaughlin*, 208 S.W.2d 843, 847 (Tex. 1948). Additionally, Kaitlyn was not "trespassing" when she was hit by the boat at Sandy Point. Finally, the Court agrees with Defendant that the policy decisions behind the attractive nuisance doctrine do not align with

Plaintiff's position. In the typical attractive nuisance case, the unaccompanied minor is incapable of assessing the latent, hidden risk, and there is no one present to assist, so the owner of the land is in the best position to mitigate the risks and make the child safe. *See generally Banker*, S.W.2d at 847; *Burk*, 620 S.W.2d at 884. Here, Kaitlyn was with her parents and her father was swimming with her near an open and obvious danger. Thus, even if she could not appreciate the risk inherent in her activities, it is difficult to say that the United States was in a better position than her own parents to do so. *See Kopplin*, 869 S.W.2d at 441 (holding that the doctrine of attractive nuisance is limited so that the burden of caring for children who cannot "recognize patent dangers is not shifted from their parents to strangers"). However, the Court need not decide this issue because the discretionary function exception bars Plaintiffs' claims in this case.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED**. The Court will enter final judgment in favor of Defendant in accordance with this Order. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 48.

**SIGNED** this 31st day of January 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE